The next case today is United States v. Santos Castillo-Torres, Appeal No. 21-1243. Attorney Bird Lopez, please introduce yourself for the record and proceed with your argument. May it please the Court, this is Alejandra Bird Lopez on behalf of Mr. Santos Castillo-Torres. I'd like to reserve two minutes for rebuttal, if I may. Yes, you may. Thank you. This Court has repeatedly cautioned that to equate near criminal charges with guilt is obvious and clear error. That is precisely what occurred in this case. Since the government cannot show that this was harmless error, a remand is required. During Mr. Castillo's sentencing hearing, the Court noted that he had pled guilty to state charges of possessing a bladed weapon. But the Court then went beyond that conviction and, relying on charges that had been dismissed, made specific findings that Mr. Castillo had engaged in violent conduct, that he had issued verbal criminal threats, that he had used a weapon against a person and caused injury with that weapon. None of this was based on any reliable evidence, but merely on a summary of the charging documents that was contained in the PSR. Now, the amended PSR contained a disclaimer that stated that the narrative that it was employing was based solely on the charging documents for the dismissed charges, and it also stated that the PSR writer took no position as to Mr. Castillo's actual behavior or conduct. The Court, nevertheless, treated these allegations as the surrounding circumstances of the conviction that it was entitled to consider, and it made clear throughout the sentencing hearing that it considered that that dismissed conduct had actually occurred and that it was proven fact, and that Mr. Castillo was guilty of the crimes that were alleged in those dismissed charges. This goes against the principle that this Court has enunciated in several cases, including Marrero-Perez and Colón-Maldonado, that no weight should be given to arrests that are not buttressed by convictions or proof of conduct. There is no such record. Yes, Your Honor. We have some disagreement among the parties as to exactly how we should read the underlying Commonwealth statute. I believe there's a comma of one side and a comma of the other. It sounds like this is up Judge Barron's alley. How do we resolve that dispute as to whether there's a comma or not, and does it make a difference to your argument? Well, honestly, we've supplemented the record just to provide the Court a complete picture in light of new arguments that the government is bringing, but we believe that this is a little bit of a red herring because the Court below did not rely on the language of the statute or on any other information regarding the statute in making its decision. It characterized the conviction below as a possession of a bladed weapon offense and drew conclusions not from the language of that statute, but from the dismissed charges, from the dismissed charging documents. So these are new arguments that are brought on appeal, and the Court really should not consider them. I think you answered the second part of my question saying it doesn't make a difference, but how about the first part? Let's assume for a moment it could make a difference. Why don't we just have an agreed-upon official translation of the statute in this record? Well, the government has provided a translation that's included in the Lexis database. I don't have any information, and the government has not provided the Court with any information that that is actually an official translation of the statute issued or published by the government of Puerto Rico. It's not included. To my knowledge, it is not yet included in any complication in the official codification of the laws of Puerto Rico annotated. And I think it's important that – I mean, I am a member of the Puerto Rico Bar. I know Spanish. I deal with the statutes in Spanish. And actually, incidentally, I also qualify as a certified translator under the rules of the local district court, and it's my obligation as an officer of the court to bring to the attention that there is an error in that translation. So the way normally this would have been resolved is if it would have been litigated in the district court and there were a conflict about the translation, we would have either made use of the court interpreter, the court translator, or we would have been able to bring expert testimony, and there would have been findings on this. But none of that happened because the court did not rely on the statute. Four minutes remaining. Here's the one way it seems to me it might matter. If I understand the – you agree that the statute requires the blade to have been shown, right? Yes, I mean, and shown here is not necessarily brandish. It could be either open carry or some kind of display. Okay. So the key thing is the dispute about whether it goes so far as to show to another or not. In other words, what is the – your position is it just says shown, and if that's all you need to prove the offense, then there's no way that the findings it relied on could be verified by the plea because they're not necessary to prove the conviction. That's how I understand your argument. Is that right? I'm not sure that I understood the question. They understood the idea is that there are certain findings, like the cutting that supposedly occurred, the threat that occurred, and you're saying those can't be deduced from the plea itself because the elements of the offense don't require those facts to have been found in order for the conviction to have been a good conviction. Correct? That's right. Okay. And I can see how if all you have to do is show a blade in the sense of open carry that your position would be correct. If it required it to be more that it's closer to a brandishing offense, then you could see how the facts about the threat might have been a necessary predicate because that would support the brandishing notion. So the idea that the district court thought the plea validated that starts to become more plausible. Maybe you should just, if that's wrong, explain why that's wrong, but I guess it just goes to the question of whether it matters how we translate the statute. Well, as I said, there's no evidence, zero evidence that the court relied on the language of the statute, but the threat allegations that were summarized in the PSR did not pertain to showing a knife. They pertain to making statements to the alleged victim of that effect. So even the showing of the knife would not constitute the threat that's described in the PSR. And I mean, I think it's important to point out here that the PSR writer, according to Rule 32, had to undertake an investigation and that investigation yielded no facts that would have substantiated or supported the dismissed charges. And it drew no conclusions. So what the court needs to do is subtract those allegations because they're there, but they can't be used against Mr. Castillo. So as I understand it, generally the facts in the PSR are presumptively reliable unless you abut them, but what you're saying is here there is no presumption of reliability because they're just drawn from a complaint and that the probation officer made that crystal clear that these weren't her findings. Correct. So doctrinally, you would say knock out that presumption because there's no reliable information to find this is a violent crime. Is that the basic line of argument? And you would say nothing in the conviction itself because it strikes the word use would demonstrate a violent crime. That's accurate, Your Honor. Yes. Those dismissed charges, it's clear from the transcript that the court formed a picture of what exactly had happened. It expressed certainty about Mr. Castillo. That's time. And so we would simply ask that this problem of using charges as a proxy for guilt is a problem. It's a recurring problem and it warrants the correction of this court. So we would ask that Mr. Castillo's conviction be vacated and remanded as soon as possible. Thank you, Ms. Byrd. Thank you. Thank you, Attorney Byrd-Lopez. Please mute your audio and video at this time. And Attorney Conner, if you could unmute your device and introduce yourself on the record for the court. Okay, good morning, Your Honors. Greg Conner on behalf of the United States. May it please the court. At issue in this case is what in a pre-sentence report a district court can permissibly review and mention its sentencing following a local conviction. This court should affirm first because there was no error or abuse of discretion in the district court's remarks about paragraph 27. And second, even if there were any error is harmless. Let me try to focus you in. I've read the transcript. And it seemed to me the sentencing judge expressly relied on a conclusion that the defendant cut a victim in connection with the prior offense. And so I think the question being raised by the other side is, what evidence is there that he cut anyone at all? And the only evidence seems to be a criminal complaint, the veracity of which the probation officer, as Judge Sarris has pointed out, did not back up. He just put it out there and said, this isn't me. This is the complaint. So what evidence of cutting is there in the record? OK, a few points, Your Honor, because in a second, I'll address that. I don't think the district court adopted the determination of the cut. But if the district court did, that is supported by reliable information. For starters, it is significant that this sentencing hearing occurred after the filing of objections, a sentencing memorandum and the amended pre-sentence report. So, first of all, there are just some facts in this case that Castillo should not be able to dispute at this point. For example, in the sentencing memorandum and in Castillo's presentation at the sentencing hearing, he acknowledges that he was in this altercation with his neighbor. This isn't a case where he was just arrested in the middle of the woods with nothing but a knife and no one around him. He was arrested as a result of that altercation. Sure, he admitted that and he got convicted as a result of that. Exactly. But my question is, if you focus on it for a minute, and I know you have some other points, which we'll give you time to get to. But my question is, what factual basis is there for the court's statement that there was the use of the weapon, semicolon, there was a cut?  We cannot hear you, Mr. Conner. No, I'm not muted. I'm sorry. I thought you were talking about Judge Kiotik. Can you hear me now? Yes. First of all, the district court had already imposed its sentence at that point. But both at that point, denying the reconsideration by Castillo and earlier in the sentencing transcript, the district court addresses paragraph 27, acknowledging that it's merely repeating what is in the pre-sentence report. The only time the district court ad-libs away from merely repeating what is in those paragraphs is when it says, I think you're prone to committing offenses, the last of which was a violent one. So both of those are true, even under Castillo's reading of the record. So starting with the various offenses, he comes to the country illegally, he doesn't complete the paperwork, his immigration is denied, he's told to leave and doesn't. The reason we know he doesn't is immigration keeps finding him in jail. Then he's forcefully removed, then he comes back anyway, and he's arrested and commits the knife offense. So the several offenses, that's easy and supported, even under his reading. And then in terms of violence, I agree with Castillo's presentation at sentencing that the comma placement in the local statute is not going to make one difference whatsoever. He was in an altercation, he pulled out a knife, and moments later, his neighbor, Mr. Sanchez, has to go to the hospital with a knife wound. So you agree that there's a comma there, I'm not a Spanish speaker, but the best I can tell is that OR shows it is followed by a comma, right? I don't agree, and what I understand to be the orthodox procedure, we got our translation from Lexis, and if you look at the top of the translation, it says that it comes from the Puerto Rican government. We can split hairs over a comma, I just don't think it matters, because either way, he was in an altercation, he pulled out a knife, it's an obvious threat of physical force, and that suffices for not a categorical or statutory determination of violence, but a colloquial, somewhat informal characterization by the sentencing judge that your knife offense was a violent one. You said he pulled out the knife in the altercation? That's correct, your honor. He admitted to pulling it out in the altercation? I'll be more precise in my wording, he admitted he's in an altercation, he admitted that without good cause and not in self-defense, he showed, displayed, brandished a knife. No, he didn't say, or brandished. He disputed brandished, but, okay. He said so. Without good cause and not in self-defense. A knife was shown. In an altercation with a neighbor, and to this day, he has not disputed that his neighbor, moments later, goes to the primary trauma center in Puerto Rico for a knife wound. Four minutes remaining. Hold up on that, because that statement was in the first PSR. It was included in the paragraph describing the complaint. And he filed an objection saying, I quote, he categorically denies the accuracy of this description. The paragraph describes conduct for which he was not convicted. And after that, the PSR was amended to make, kind of hold at arm's length that complaint. So I don't see how you possibly say that he didn't dispute that there was a cutting, he didn't dispute the guy went to the hospital. It seems he disputed the whole description beyond the minimal amount he was convicted of. Okay, two points, Your Honor. First, the sentence preceding what you just read is he objects to the paragraphs describing his conduct. And that's why we rely on the SIR line of cases, because this case would be a lot different if Castillo went to the sentencing judge and said, I wasn't in an altercation, and there was no resulting injury. But he never did that. He only qualified his objection based on his conduct. And second, we know at least part of that objection is ineffective. He says he can object till he's blue in the face. He pleaded guilty to the felony. So at the very least, part of the objection about the description of his conduct pertains to what he pleaded guilty to. Well, no, it doesn't. He said he only was challenging things that went beyond what he pleaded guilty to. And that includes cutting. That includes the guy going to the hospital. I mean, otherwise, if what you're saying is correct, why did they amend the PSR? They amended the PSR to show that the probation office got the information from the complaint. But I'm distinguishing him contesting what he pleaded guilty to, which is, you know, they use the word brandish and use. And he at least accepted guilt for showing, even if you don't think that's brandishing. If we read the record somewhat differently than you do, we think he did object to the portion. Something's funny with the video. I noticed that, too. If we didn't agree with your reading of the record on this point, what's the consequence for your case? Castillo still loses because he accepted that he was in an antagonistic altercation with his neighbor. And without good cause and not in self-defense, he shows a knife. That, under a colloquial sense, the district court could permissibly say that that was violent. Would you say it's a fair reading of the record that the district court, in reaching its conclusion, relied only on that understanding? Sorry, on what understanding, Judge Barry? The one you just gave and did not rely on the understanding that the person went to the hospital and had been cut. And I'm sorry, is your question whether that happened or whether that's... You think a fair reading of the district court's reasoning was that it gave no weight whatsoever to the person having gone to the hospital and having been injured from the knife? Yes, because the district court expressly says, quote, the description of the offense as it appears in the pre-sentence report, and then the next paragraph, according to the complaint. So those portions of the district court's explanation are showing the district court's merely repeating what's in the pre-sentence report. This court has said many times that's not an error. But determining that it was violent, anytime you're in an antagonistic altercation, which is Castillo's wording, anytime you're in an antagonistic altercation and somebody shows a knife without good cause, not in self-defense, yes, that is an appropriate reading. So you would say just showing is violent? In a colloquial sense, this is not a categorical approach or statutory sense. In a colloquial sense, that is a threat of force. If I have an open carry knife on my belt, and then I'm just in the bar, and then I get in a fight, I've shown the knife during the altercation, and I didn't have good cause if I wasn't allowed to do it, and it wasn't in self-defense, you'd say that's inherently violent? To understand your hypothetical, are you saying that the knife is in some container on your belt or something like that? Because that to me does not indicate showing. I think showing, it's undeniable in our view on this record that the showing was pulling out a knife in this case. It's not hidden on a belt or anything like that. It is displaying the knife. That's time. That's a threat of force. Thank you. Thank you. Attorney Conner, if you could mute your camera and your audio at this time. And Attorney Byrd-Lopez, you have two minute rebuttal. Please reintroduce yourself on the record. Alejandra Byrd-Lopez on behalf of Mr. Santos Castillo-Torres. A few points to pick up on some of the questions that the panel made. First of all, the government is trying to bring to bear a rule about unobjected to PSR conduct, which does not apply in this case. As the court pointed out, we did object to the PSR, and the PSR was amended to reflect our concerns about the PSR. And what it asserted was that these are not factual findings that the PSR writer made, but simply a summary of charges that are contained in charging documents. And that distinguishes this case from virtually all the other cases where their support is found from unobjected to PSR language. Ms. Byrd-Lopez, what do you say to the argument that Mr. Conner just made? I think he's telling us that he thinks we should read the record as the district court just mentioning what was in the complaint regarding cutting, but not in any way relying on a finding that there was a cutting in making sentencing. I think that's one of his arguments. What do you say to that? I think that a fair reading of the entirety of the transcript shows that that was not the case. Now, the court did make some isolated statements to the effect that I'm just going by the record and all I have is the conviction. But when you read the text of what the court was saying, it went on to rely specifically on the dismissed charges to form a picture of what Mr. Castillo had done. And she said that he had committed violence based on that information and not on some more limited view of the information that the government is now propounding. Could you just address this other point, which is assuming that we thought you could read the record to say the district court didn't necessarily rely or it wasn't determinative that there was a cutting. That what for her was determinative was that there was a showing of the knife in a threatening way. I take Mr. Conner to be making the argument that from the conviction, we know he showed the knife. And from his own concession, we know he was in an altercation right beforehand. And so putting the two together, why isn't it a fair inference that he showed the knife in the altercation and therefore was threatening violence? Well, we never conceded or accepted a physical altercation. We mentioned in that an antagonistic interaction. So our words, I mean, we would stress on that point on our briefs and on the information that was submitted. We only mentioned it. We acknowledge that some sort of incident occurred. That's what I'm saying. Why isn't it a fair? His argument is that it wasn't like these were just two passing strangers. There was an altercation between them, not physical. They had words. It wasn't friendly. It was then followed with him showing a knife. Why isn't that enough to infer that it was a threatening showing just from the record? Well, it is too much. Yes, it is not too much. It is too much to infer that it was followed by a showing of the knife. We don't know that that's what happened. We know that he pled guilty to an open carrier of openly having a knife, but not that he took it out as a result of the interaction. That's really to connect the dots in a way that the record does not provide the information for. If I could just make two very brief points with the permission of the court. The court specifically made reference to cases in which plea agreements are made and that everything always entails negotiations suggesting that dismiss charges are basically always true. That shows that it was considering the dismiss charges as true. I think you're starting to go beyond rebuttal. We'll give you another minute, but keep it as rebuttal. If you raise two points, we're going to have to give Mr. Connor more time. Yes. No, that's fine. I think that unless the court has any further questions, I would just rest on the briefs. Thank you. Thank you. That concludes argument in this case. Attorney Byrd and Attorney Connor, you should disconnect from the hearing at this time.